## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

BIO ENERGY (WASHINGTON), LLC,
16650 228th Avenue SE
Maple Valley, WA 98038

      Plaintiff,

      v.

IPGC HOLDINGS LLC
2200 Atlantic Street
Stamford, CT 06902

      Defendant.

Case No. _____

Judge: _____

## COMPLAINT

Defendant, IPGC Holdings LLC ("IPGC"), breached its services agreement (the "Services Agreement") with Bio Energy (Washington), LLC ("BEW") by failing to return to BEW certain records, as required by the Service Agreement's terms.  BEW, therefore, brings this Complaint for injunctive relief to compel IPGC to take those actions required by the Services Agreement.

### THE PARTIES

1.      BEW is a Delaware limited liability company with its principal place of business in Maple Valley, Washington.

2.      IPGC is a Delaware limited liability company with its principal place of business in Stamford, Connecticut.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over IPGC based on (i) its execution of the Services Agreement, (ii) the fact that the Services Agreement creates certain obligations for IPGC to provide services to BEW in Ohio with respect to the litigation between BEW and Guild Associates, Inc., an Ohio corporation, ("Guild") currently pending in the U.S. District Court for the Southern District of Ohio, Eastern Division, and (iii) the fact that IPCG has caused tortious injury to BEW in Ohio by intentionally interfering with BEW's ability to perform under the Settlement Agreement with Guild.

5. Venue is proper pursuant to 28 U.S.C. §1391 because Section 12(d) of the Services Agreement provides that: "[n]otwithstanding the provisions of this Section, any party may bring a claim for injunctive relief before a court with jurisdiction without first submitting the claim to arbitration." In this action, BEW is seeking only injunctive relief, and that relief concerns the immediate return to BEW of documents that are the subject of an outstanding Court Order directed at BEW in this District.

### FACTS

6. Ingenco Holdings, LLC ("Ingenco") is an energy production company, the predecessor of which was founded in 1989. Initially, Ingenco's generation facilities employed engine generator sets that operated on diesel fuel, but in the late 1990s Ingenco began exploring the use of landfill gas to operate its generation facilities. Landfill gas is a renewable energy source that, when used to generate electricity, provides environmental benefits by reducing the release into the atmosphere of the greenhouse gas methane that is generated by landfills.

2

7.    In the course of more than 20 years of growth, Ingenco ultimately owned and operated numerous landfill-gas-to-electricity and distributed generation facilities located in the Mid-Atlantic region. Ingenco sold the electricity generated by its landfill-gas-to-electricity facilities into the PJM Interconnection ("PJM") wholesale electricity market, to utility companies, and directly to end-users, including various colleges, universities, and businesses.

8.    Among Ingenco's operating assets is the Cedar Hills landfill gas purification facility located in Maple Valley, Washington ("Cedar Hills Facility") that is owned by BEW, Ingenco's wholly owned subsidiary.

9.    In 2013, Ingenco's founder and majority owner, Charles Packard, began to explore the possible sale of Ingenco's landfill gas to electricity generating assets, and retained investment bankers to assist in that process.

10.    During that sale process, Ingenco's investment bankers were approached by the global commodities-trading firm, Castleton Commodities International, LLC ("Castleton"), which markets a broad range of physical commodities, including natural gas, natural gas liquids, refined products, crude oil, fuel oil, freight, petrochemicals, electric power and coal and financial instruments related to commodities. Castleton is headquartered in Stamford, Connecticut and has offices in Texas, Canada, China, England, Switzerland, and Uruguay.

11.    Castleton was interested in making an investment in the renewable energy space by acquiring an entity that sold renewable electricity into the PJM wholesale electricity market and that had exposure to market price movements.

12.    Ingenco and Castleton ultimately agreed to explore a possible transaction.

13.    IPGC is a subsidiary of Castleton.

### The Transaction

14.     Castleton, through another of its subsidiaries CCI U.S. Asset Holdings, LLC ("CCI U.S."), ultimately agreed to buy from Ingenco all of the equity interests of certain of Ingenco's subsidiaries (but excluding BEW) (the "Transaction").

15.     CCI U.S. and Ingenco's agreement regarding the Transaction was memorialized in an Equity Purchase Agreement dated March 17, 2015 (the "Purchase Agreement"). The Purchase Agreement contains certain representations, warranties, and covenants of the parties related to the Transaction.

16.     The Transaction closed on May 27, 2015 (the "Closing Date").

17.     As part of the Transaction, CCI did not acquire BEW or the Cedar Hills landfill gas purification facility owned by BEW.  As a result, the Cedar Hills Facility remains the property of Ingenco through its wholly owned subsidiary, BEW.

### The Litigation and the Services Agreement

18.     At the time that the Transaction between Ingenco and CCI U.S. closed in May of 2015, Ingenco and BEW were involved in litigation against ACE American Insurance Company arising from the failure of a nitrogen rejection unit diffuser basket supplied by Guild. That case is styled as *Ingenco Holdings, LLC and Bio-Energy (Washington), LLC v. ACE American Insurance Company*, which case was then pending in the United States District Court for the Western District of Washington (Case No. 2:13-cv-00543) (the "Ace Insurance Claim").

19.     Additionally, Ingenco's wholly owned subsidiary, BEW, was involved in litigation in the United States District Court for the Southern District of Ohio in two cases styled as: (1)

4

*Guild Associates, Inc. v. Bio-Energy (Washington), LLC,* pending in the United States District Court for the Southern District of Ohio (Case No. 2:13-cv-01041); and (2) *Navigators Specialty Ins. Co., v. Guild Associates, Inc. and Bio-Energy (Washington), LLC*, pending in the United States District Court of the Southern District of Ohio) (Case No. 2:14-cv-01676) (collectively, the "BEW Litigation," together with the Ace Insurance Claim, the "Litigation").

20.      Given the Litigation, Ingenco and BEW needed to ensure continuing access to certain of Ingenco's former employees (who would become CCI U.S. and/or IPGC employees as part of the Transaction) to protect its interests in the Litigation.

21.      Consequently, BEW, Ingenco and IPGC (collectively, the "Parties") executed the Services Agreement, which agreement was also effective on May 27, 2015, the Closing Date of the Transaction.  The Services Agreement provided for both litigation and plant operations support from Ingenco's former employees after their employment was transferred to CCI U.S. or IPGC. The Services Agreement was a material component of the consideration provided to Ingenco in the Transaction.  A true and accurate copy of the Services Agreement is attached as Exhibit "4".

22.      Pursuant to the Services Agreement BEW and Ingenco paid IPGC a monthly "Service Fee" for work that they needed performed to assist them in either the Litigation or in supporting the operation of the BEW landfill gas processing plant.

23.      Additionally, Section 6 of the Services Agreement contains the following provision, with IPGC as the "Provider," BEW as the "Company, and the ACE Insurance Claim and the BEW Litigation collectively defined as the "Litigation":

> **Data Ownership.**   All data, records and reports relating to Operations and Litigation (collectively, the **"Records"**), whether in existence at the Effective Date or compiled thereafter by Provider in the course of performing its services to Company hereunder, shall be treated by Provider as the exclusive property of Company and the access to or furnishing of such Records by Provider shall not grant any express or implied license to Provider related to such Records other than

that which is necessary for Provider to perform and provide the services to Company.  Provider acknowledges that Records provided to it by Company, pursuant to the terms of this Agreement, are and shall remain the property of Company and that the use of such Records shall be in accordance with the terms of this Agreement and Company's standard procedures.  Upon request by Company and upon termination of this Agreement, Provider shall within a commercially-reasonable period after such request deliver to Company the Records in electronic format and in such hard copy as exists on the date of the request by Company.

24.     Among the Records described in Section 6 of the Services Agreement are certain documents that had been produced by Guild in the BEW Litigation ("BEW Litigation Records"). To the best of BEW's knowledge, these BEW Litigation Records are still located on an inactive computer server transferred to CCI as part of the Transaction.  The BEW Litigation Records are protected from unauthorized access by one or more passwords.  Moreover, certain of the BEW Litigation Records were designated as "Confidential – Subject to Protective Order" by Guild pursuant to protective orders entered into in the Litigation.  Those former employees of BEW and Ingenco who had access to the BEW Litigation Records signed acknowledgements agreeing to be bound by the terms of the various Protection Orders entered in the Litigation.

25.     On or about May 17, 2017 BEW settled both cases that comprised the BEW Litigation.  As part of that settlement, BEW had to either return documents designated as "Confidential—Subject to Protective Order" to the opposing party, or it had to certify that such documents had been destroyed.

26.     In late July of 2017, BEW recognized for the first time that certain documents subject to the protective order in the BEW Litigation may have remained on the computer server transferred to CCI as part of the Transaction.  This discovery came as a result of BEW's litigation counsel's efforts to start marshaling documents designated "Confidential—Subject to Protective Order" that would need to be returned to Guild or destroyed, pursuant to the terms of the Settlement Agreement in the BEW Litigation.

27. All of the documents designated as "Confidential—Subject to Protective Order" that remained on the server transferred to CCI concern the Cedar Hills Facility owned by BEW. As set forth above, this facility was not transferred to CCI as part of the Transaction. Hence, the BEW Litigation Records remain BEW's and Ingenco's property, given that CCI did not acquire either BEW, or the facility to which these records are related. This fact is explicitly recognized in Section 6 of the Services Agreement.

28. On August 18, 2017, BEW's counsel sent a letter to IPGC's in-house counsel requesting the return/destruction of those documents covered by the protective orders in the BEW Litigation, as well as certain additional assurances from IPGC. A true and accurate copy of the August 18, 2017 correspondence is attached as Exhibit "1".

29. Subsequently on August 25, 2017, IPGC's in-house counsel informed BEW's counsel that CCI's upper management had agreed to the "ask" contained in the August 18, 2017 correspondence. A true and accurate copy of the August 25, 2017 e-mail is attached as Exhibit "2".

30. On August 30, 2017, IPGC's in-house counsel provided a further update regarding the status of the documents in question. He reported that the server on which the documents in question were located had been retired by CCI U.S. as much as two years earlier, and that it was not connected to CCI's current computer server. He also reported that only one of CCI's employees had access to the retired server. That employee, Erick Halter, who previously worked for Ingenco, had agreed to be personally bound by the terms of the protective orders in the BEW litigation. Accordingly, BEW had every reason to assume that IPGC intended to follow through on its counsel's August 2017 representations. A true and accurate copy of the August 30, 2017 e-mail from CCI's in-house counsel to BEW's counsel is attached as Exhibit "3".

31.     Subsequently, IPGC failed to follow through with the promises that it made in August of 2017.

32.     Instead, IPGC attempted to link its compliance with its contractual obligations under the Services Agreement to an unrelated issue between the parties.

33.     More specifically, CCI U.S. and Ingenco are involved in litigation pending in the United States District Court for the Southern District of New York related to the terms of the Transaction.  Consequently, beginning in October of 2017, IPGC linked its compliance with its straightforward contractual obligations under the Services Agreement to the Ingenco/CCI U.S. dispute.  More specifically, IPGC stated that it wouldn't comply with its obligation under Section 6 of the Services Agreement to return the documents in question to BEW, nor provide the certification it had agreed to provide in response to the August 18, 2017 letter from BEW's counsel unless Ingenco agreed to mediate its dispute pending in New York with IPGC's affiliate, CCI U.S. Despite the fact that Ingenco agreed to the CCI U.S. mediation request, CCI subsequently backed out of that agreement as well, and is now refusing to comply with the requirements of Section 6 of the Services Agreement with the intention of preventing BEW from performing under the Settlement Agreement in the BEW litigation and causing BEW injury.

34.     Since August of 2017, the Company has sought to have IPGC adhere to its contractual requirements so that BEW, in turn, can adhere to the terms of its Settlement Agreement in the BEW litigation.

35.     IPGC's failure to comply with its contractual obligations has now come to a head. On March 22, 2018, the District Court for the Southern District of Ohio issued an Order under seal in which it ordered BEW to "return, delete or destroy, within fourteen (14) days of the date of this Opinion and Order, all confidential and proprietary documents relating only to the Underlying

Action, the Washington state court action, and this action, and to certify on the record that it has done so." The "Underlying Action" is the *Guild v. BEW* case referenced earlier.

36.     IPGC's refusal to comply with its obligations to return the BEW Litigation Records pursuant to Section 6 of the Services Agreement, and its failure to adhere to what it agreed to do in August of 2017, means that BEW cannot fully comply with the Court's March 22, 2018 Order.

37.     In the BEW Litigation, Guild has moved to have BEW held in contempt of court for its inability to comply with the Court's Order as a result of IPGC's refusal to comply with Section 6 of the Services Agreement.

38.     BEW has now advised the Ohio District Court of this issue.

**COUNT ONE**
**BREACH OF CONTRACT**
**(PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF)**

39.      BEW restates and incorporates by reference the preceding paragraphs of this Complaint.

40.     Pursuant to Section 6 of the Services Agreement, the BEW Litigation Records remain the property of BEW and Ingenco.

41.     BEW and Ingenco have demanded the return and/or destruction of the BEW Litigation Records in accordance with the terms of the Services Agreement.

42.     IPGC's refusal to return and/or destroy the BEW Litigation Records as requested by BEW and Ingenco constitutes a breach of the Services Agreement's terms.

43.     Absent an order from this Court requiring that IPGC comply with the terms of the Services Agreement, BEW will suffer irreparable injury because it cannot comply with the terms of the Southern District of Ohio's Court Order, and may be found in contempt of court.

44.     No adequate remedy exists at law to protect BEW's interests.  Only through IPGC complying with the terms of the Services Agreement can BEW be made whole, and avoid irreparable harm to its interests.

45.     The balance of equities tips in BEW's favor.  Indeed, the only reason that IPGC is failing to comply with the Services Agreement's terms is in order to extract concessions from BEW in an unrelated matter and, consequently, to cause BEW injury in Ohio.

46.     An injunction is in the public interest.  IPGC should not be permitted to use its refusal to comply with the terms of the Services Agreement, which it expressly understands prohibits BEW from complying with a Court Order, as leverage in another unrelated matter.

**COUNT TWO**
**TORTIOUS INTERFERENCE WITH CONTRACT**
**(PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF)**

47.     BEW restates and incorporates by reference the preceding paragraphs of this Complaint.

48.     BEW entered into a Settlement Agreement to resolve the BEW litigation.

49.     IPGC had actual knowledge of the existence of the Settlement Agreement, as described in the preceding paragraphs herein.

50.     IPGC has intentionally interfered with BEW's ability to perform under the Settlement Agreement in the BEW litigation as described in the preceding paragraphs herein.

51.     IPGC's interference with BEW's Settlement Agreement in the BEW litigation has caused, and is causing, irreparable harm to BEW.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff BEW requests the following relief:

A. An injunction requiring either that (1) IPGC immediately destroy all of the BEW Litigation Records in its possession, and certify to BEW that IPGC has destroyed all such records; or (2) return the server containing the BEW Litigation Records to BEW, and certify that no copies of the BEW Litigation Records on such server have been made or retained by IPGC or its affiliates, so that BEW may comply with the Court Order and its obligations under the Settlement Agreement.

B. An award of attorneys' and other fees and costs and expenses of this litigation;

C. Entry of an order for such further relief as the Court may deem just and proper.

Dated: April 25, 2018          Respectfully submitted,

LANE ALTON

/s/ Christopher R. Pettit
Christopher R. Pettit (0069926)
Two Miranova Place, Suite 220
Columbus, Ohio 43215
Tel.: (614) 228-6885
Fax: (614) 228-0146
Email: cpettit@lanealton.com

*Counsel for Bio-Energy (Washington), LLC*